The first case, or I guess the only case today to be argued, is 11-99-009 and 0010, Rogers v. McDaniel. Each side will have 30 minutes. Are we ready for, I guess, the appellant here? First is the warden, is that right? I beg your pardon, Your Honor. The appellant is the warden? That's correct, Your Honor. Good morning. Good morning, Your Honor. May it please the Court, Counsel, my name is Robert Wieland. I'm a senior deputy attorney general employed by the Office of the Attorney General of the State of Nevada, and I have the privilege of representing the appellant respondents in this case. Nearly 35 years ago, Mark Rogers murdered three people in Pershing County, Nevada. The victims, one of whom was a, well, the father, was shot three times, stabbed twice. The mother was shot and stabbed, and then the daughter, who was disabled, she was blind, she had an artificial eye and was blind in the other eye due to her diabetes, was executed with a single shot to the back. The prosecutor theorized and the evidence supported that the three victims had been away from the Strode residence. They returned to find the defendant, the petitioner in this case, Mark Rogers, inside the residence, snacking. The mother entered first. She was slain. There was a struggle with the father. The butcher knife that was used for stabbing was left in his body, and then after that Rogers murdered Miriam Treadwell, the daughter, the blind lady. The prosecution out there brought charges. Rogers was convicted of three counts, first three murder. The prosecutor presented evidence with respect to a variety of aggravators, two of which the jury found. The jury found that the murders were aggravated by prior conviction for a violent felony and also by the murders were depraved. There was a depravity of mind instruction. And in your appeal, it is only the district court's issuance of the writ with respect to the penalty phase of the trial that's at issue, correct? That's correct, Your Honor. Okay, so let's, if we could, I'd like to ask you, at the time of the trial, had the word depravity in the aggravation statute been narrowed by the Nevada Supreme Court? No, it had not, Your Honor. At that time, the narrowing actually became about later. 1990 or so is as close as I can tell. I think that's approximately correct, Your Honor. So would you address the district court's conclusion that the depravity aggravator was unconstitutionally vague at the time of this conviction? The way Nevada works with respect to the death penalty is the prosecution is required to prove one or more aggravators beyond a reasonable doubt. Right. And let's assume that you proved the prior convictions aggravator. Okay. I'm focusing now on the depravity aggravator. Right. Okay. And with respect to, now, this is a case that's governed by the Anti-Terrorism and Effective Death Penalty Act. And the issue with respect to the vagueness of the particular jury instruction, the depravity of mind jury instruction, was addressed on direct appeal. The direct appeal became final in 1985. The question is whether the Nevada court's conclusion is unreasonable. Objectively unreasonable. That's exactly the point, Your Honor. And as I argue in the brief, that conclusion was not objectively unreasonable. And it was distinguishable from Godfrey, as the Nevada Supreme Court did in the direct appeal. Godfrey said that in that instance, the fact that the murder was outrageously or wantonly vile, horrible, or inhuman by itself did not, was vague. In contrast to that, the Nevada instruction included a specific intent aspect by which the acts were done. Not their appearance, but by which the acts were done. And that was inherent deficiency of moral sense and rectitude, corrupt evil intent, evil, corrupt, perverted intent, devoid of regard for human dignity and which is indifferent to human life. And that was the distinction the Nevada Supreme Court made in the direct appeal. Here's my difficulty with that, and perhaps you can address it. The vagueness doctrine has to do with whether advance notice has been given from the statute to a defendant of conduct that might be prohibited. The instructions in this case surely didn't give advance notice to the defendant of the conduct that might be prohibited. And so what I was searching for was some Nevada Supreme Court decision prior to this that might have said this inherently vague phrase, depravity, was somehow defined in a way that a defendant would have notice in advance of the consequences of his crime. I recognize that instructions were given in this case to the jury, but that's a different issue than vagueness. Vagueness has to do with advance notice. So what was there in advance of this case that defined this term? I, with all due respect, Your Honor, I don't think that's the correct approach to this. Well, whether or not it is, I'm still asking that question. What was there in advance of this case in Nevada that defined the term depravity in such a way as to narrow its inherent vagueness? Well, that's the point, is whether it sufficiently narrows the class of conduct. It's not a notice question, as in did we post something? Vagueness is in the sense that it deals with due process. Now, maybe I'm wrong, but the question I'm asking is before this defendant was convicted, how would anybody know what the limits of the term depravity were? Well, by virtue of the terms itself that are here in the instruction, Your Honor. The instructions occur in this case as part of the penalty phase of the trial, right? Yes. So before he was convicted of the murder, were there any, would anybody looking at Nevada law know what the term depravity meant? If they looked at this and they said, the issue is not whether it's the issue is not whether he knew. The only issue is it's unlawful to murder somebody. Sure. It's not the point in this under the Eighth Amendment is not whether he's on notice that if he murders somebody in some fashion, there are certain aggravators. The point is in this, and with all due respect, Your Honor, I don't think the issue that you're questioning me about at this point in time is even before the court. Well, sure. The district court said the depravity aggravator, the instruction about depravity was unconstitutional. It's unconstitutional. Because the aggravator had not been previously narrowed by constructions of the Nevada Supreme Court. That's what the district court said here, correct? Okay. But the point is, Your Honor. And that's the issue you've appealed. So that's why I'm asking this question. All right. But that's not the point, Your Honor. The point is, is as you initially phrased it, was it unreasonable, objectively unreasonable for the Nevada Supreme Court to conclude in 1985 in Rogers' direct appeal that it was not unconstitutionally vague and that, therefore, he had notice? And I would be. So what — and that's — you and I are on the same wavelength here, and this is what I'm trying to find out. You say the Nevada Supreme Court concluded that this term, depravity, was not unconstitutionally vague. Why was it not unconstitutionally vague? All right. It's not unconstitutionally vague because the depravity in Nevada, the depravity in Nevada, as opposed to what was discussed in Godfrey, requires an intent of mind. Godfrey required no intent. We're on the same wavelength now. Okay. When did the Nevada Supreme Court say that depravity required intent? The first case. I'm sorry. I don't know. Was it before this case or after? I don't know the answer to that question, Your Honor. Okay. You see what I'm trying to find out? I'm trying to find out whether before this case the Nevada Supreme Court had somehow defined this term, which we both agree on its face is not very specific, to — Well, I believe it's certainly specific enough. And this Court, back in 1986, thought that that was specific enough. I direct the Court's attention to the Cheney case, which I cited in my brief, which talks about, and I'll read, if the Court doesn't mind, the aggravator there was cruelty depraved and heinous, which involved the killer's state of mind. And it was written by a judge in the panel, future Justice Anthony Kennedy, who was on the panel. This opinion was written by Judge Choi. Could you give me this slide again, please? Yes. It is 801 F. 2nd, 1191. And I direct the Court's attention specifically to page 1195 through 1196. And in the case of Barred, the Arizona Supreme Court has affirmed a death sentence consistent with the criteria set forth in the previous decisions. The record shows that the man is not guilty. But in those cases, and I'm familiar with the Arizona Supreme Court a little bit, the Arizona Supreme Court had already issued decisions defining the terms before the defendant was convicted. And so what the Court said in those cases is those terms have been narrowed by judicial construction so that they were no longer vague at the time the defendant was convicted. And so what I've been trying to find out is whether there was any judicial construction prior to this case narrowing them. Well, in this case, the judicial construction in this case is the narrowing. On the appeal? Yes. The judicial construction is now subsequently, subsequently, and I believe it was Robbins, the Nevada Supreme Court said, well, and subsequent to this time, they said, well, okay, depravity of mind is not good, but torture and mutilation and those other aspects are fine. Indeed, this Court said that in Deutscher's case. Right, because I understood that you didn't argue torture and mutilation in this case. Deutscher is irrelevant to the decision because Deutscher is subsequent. Right. This Court's decision in Deutscher is subsequent. No, he said torture. You said Deutscher. Oh, I'm sorry.  My question, let me ask you, let me ask you a question. The case you cited to us a moment ago, 801 Fed Second, what's the name of that case? It is Chaney v. Lewis. I'm sorry, Chaney? Chaney, C-h-a-n-e-y v. Lewis. And when was that decided? I've got it as amended, rehearing November 28, 1986. And you agree that? A year after the decision in Rogers. But you agree that Chaney v. Lewis was a case that involved an Arizona death sentence, and the issue was whether the Arizona Supreme Court had narrowed, before Chaney was convicted, the definition of cruel, heinous, and depraved. And the court of appeals said, yes, it has. Well, notwithstanding that, notwithstanding that, the court of appeals said, under these circumstances, the heinous and depraved, the victim was fully conscious after Chaney shot him and knew of his impending death, suffered great pain. The murder was heinous and depraved. They used the words heinous and depraved. We're missing each other here. What the court said was it's heinous and depraved because prior Arizona decisions have defined heinous and depraved in such a way that the facts of this case meet it. Isn't that what the court said? I don't agree that that's the only interpretation, or even, you know, frankly, the correct interpretation. The interpretation is that heinous and depraved, and depraved when involving a state of mind, as applied to the facts in this case, which are similar to the facts in this case, particularly with the helpless victim, Miriam Treadwell, who was executed. Chaney shot a helpless victim from behind when Chaney could instead have made his escape. Let me try this differently, Steve. Do you agree that the U.S. Supreme Court in Walton held that the term cruel, heinous, and depraved was facially unconstitutional? That was after Godfrey. Before, actually. Sorry. Okay. And then what happened was state courts said, we have these facially unconstitutional terms, but we can narrow them. We can come down with constructions that we can define the terms. And that's what happened in Chaney. The Arizona Supreme Court defined the terms, and this court said Chaney can't complain because even though the term is facially vague, the Arizona court has defined it. And so what I'm trying to find out, you may not think it's relevant, and maybe you're right, is whether or not there's any narrowing before this case by the Nevada Supreme Court. I understand it narrowed. It looks at the facts of this case. So you're suggesting that in the absence of a narrowing construction applied prior to the time Rogers committed his murder, the instruction in this case is vague and doesn't sufficiently channel. That's exactly what I'm asking. Now, that may be wrong. So first, direct my factual premise. No narrowing construction prior to this case. I don't think that's relevant. Okay. So tell me why a narrowing construction on appeal in this case solves the vagueness problem, and cite a case for me that says that. I'm not saying that there's even a – my point is there's no problem at all because the instruction itself passes muster in the first instance. So your position is that the district court can narrow – the trial court can narrow a vague statute through its instructions? This is the accepted instruction in Nevada at the time, 1985. So you answer my questions, yes. Your position is that if you have a vague statute, a district court can solve the vagueness problem, a trial court in Nevada, by issuing the accepted instruction. Courts construe statutes all the time. Courts construe statutes all the time. The issue in this case is whether the instruction – not whether he was on notice – whether the instruction was vague and didn't sufficiently channel. And my argument is it did. Okay. I understand your argument on that point. Could you address, if you would, the convictions issue with respect to the 1977 out-of-state conviction? What happened – And I have a very specific question about that. Certainly. At the time in Nevada, would that – would the guilty plea without a sentence have qualified as a conviction? I believe it would, Your Honor. And what case – The Nevada Supreme Court – What case do you cite? Well, subsequently in this action, the Nevada Supreme Court, albeit it relied on a statute passed 15 years later, said that the – that 1977 conviction sufficed. Okay. But in the absence of the statute that occurred 15 years later, if you came to a trial judge in 1977 and said, I have this conviction, I have this case in which a person pleaded guilty but was never sentenced, would that have qualified as a prior conviction? I believe it would have, Your Honor. If we look at the order in – I believe it's Rogers' third state post-conviction action, the judge there, the state judge said the objection would have been overruled. Now – Yeah, I know the judge said that. Tell me what case law you would have relied on at the time for that proposition. Your Honor, the – I think there are cases – Your Honor, the Nevada Supreme – beg your pardon? Well, the Nevada Supreme Court ruled in this case later relying on the statute. And your opponent makes an argument which I think has some validity, that you can't apply the statute retrospectively. So my question is, at the time, if I were a Nevada judge at the time and you came to me with that issue, what statute – what would you have cited? The court can rely on the principle that later codification of a vague statute itself would be indicative of what the law was. Right. And you argue that in your brief. I'm asking a different question. I can't answer your question, Your Honor, with respect to that. The Nevada Supreme Court did not, when it ruled, say – it's never made a clear statement that in 1985 that was – would have been regarded as a valid conviction. And there's no case law you can cite me either way on that proposition? There are some cases dealing with DUI offenses and stuff, but, you know, frankly, Your Honor, that's specific to those statutes, I believe. Now, assuming, assuming for the sake of argument, that the aggravator, particularly – either way, if you remove from the calculus, if you remove from the calculus the 1977 conviction, and if you determine that the instruction to aggravate the depravity of my instruction is constitutionally vague, there still remains one valid aggravator. And what do we know about that? We know, because the prosecutor presented evidence, that the 1975 or 76 conviction for aggravated battery, this is what Rogers did, and this was what the jury was aware of. The defendant severely cut Michael Folger about the head and face with a broken glass. He was stitched up at the hospital for a total of 70 stitches used to close the numerous wounds on his face and neck, the victim's face and neck. The longest lacerations were on the victim's left side of the neck. One wound required 26 stitches, the others 13. Okay? Now, the issue then becomes, can this court be fairly assured that in the absence of that, those two things as aggravators, the 1977 conviction or the depravity of mine, can this court be fairly assured that the jury still would have determined that Rogers was death eligible? And I submit to the court that the answer to that is yes, and I respectfully submit to the court that that's where the Federal district judge erred. Sure, he was death eligible, and I don't, nobody doubts that. Well, I don't want to mislead, Your Honor, because I don't want you to be misled, Your Honor. Nevada's got a two-step process. Right. Is there an aggravator? Do you, then in Nevada, then you have to put the, consider the mitigators as against the aggravators and determine whether or not the mitigators outweigh the aggravators. If they don't, he's death eligible. Counsel, Judge Gould, could I interject a question here? Certainly, Your Honor. On this point that you're traversing, if we assume that the 1977 conviction was not a conviction because of lack of sentence and assume that Justice Stewart's opinion in, I guess it's Godfrey, means that the jury instruction was vague. So you take those, if we assume that, as you've said in your question, take those out of the case, and the only aggravator is the earlier conviction. That's correct, Your Honor. Then isn't the issue technically whether the mistake on the jury instruction, for example, had a substantial and injurious effect on the proceeding under Brecht? Is that the standard for determining if we give relief for the error or not? Yes. And that's why I'm saying remove that evidence. Just remove that. Okay. So let's say we do that. Now your position appears to be that we should say this error didn't cause any effect because of the 1976 conviction alone, but that assumes that the jury couldn't have struck a different or wouldn't have struck a different balance considering mitigation versus aggravator. Yes. I think you're right. So how do we know that with any reasonable degree of certainty that the jury would not have made a different decision? Well, that's what I'd like to devote the time to, because if you look at the quality of the mitigating evidence, particularly with respect to what the defense was trying to do, they were trying to show that the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance. The murder was committed while Rogers was under the influence of extreme emotional or mental disturbance. That was the mitigator the defense counsel was shooting for when they presented the mitigating evidence in this particular case. But if you look at the testimony, and much has been made of the fact that Mark Rogers has some mental problems, but I believe respectfully the district court gave undue weight to that. And I think the jury, I think the court can be fairly assured that the jury didn't consider it the same way the district judge did for the simple reason that in one of the circumstances, there was all manner of evidence that Rogers was faking his mental illness. If you look at Excerpt to Record 2483 and 2485, Dr. Richnack admitted that two people on his staff thought that Rogers was faking, and he acknowledged that Dr. Guttreid thought that he had, he, Rogers, had an antisocial personality. And then the prosecutor asked Dr. Richnack, you know, what are we talking about, antisocial personality? If you look at Excerpt to the Record 2493, and he says, what are those people? Are those folks that are just downright mean? And Dr. Richnack says, criminals. That was his response. So the jury, he said, this guy's downright mean, and he's a criminal. Let me ask you this. What I'm not clear about, and maybe I misunderstood your answer to Judge Gould's question, you said, I think, let's assume that we, Nevada's a weighing state, right? Yes. Let's suppose you take off from the scale two of the weights on the scale for aggravation. You take out the depravity business. You take out the conviction business. How do we know that they wouldn't weigh it differently? I mean, how could we possibly know that? Well, in such case, you're just going to conclude you're not going to make any judgment at all, and you're going to say, okay, two aggravators are gone, and therefore he gets federal habeas relief. And that's not what the law says. We have to look and see if there's a substantial and injurious effect. I would also like to point out that Dr. Guttreid, excerpt to the record, 2090, testified that Richnack had told him that he had been fooled by Rogers and that this antisocial personality. So I think, frankly, what the jury considered, not so much that he's got a mental problem, but this guy is antisocial and just plain mean. The defense in this case was an insanity defense. It requires the defendant to prove by a preponderance of the evidence. He doesn't know right from wrong. They failed in that. But I'm still not clear. What do we do about the problem that, in effect, if you take out the two aggravators, you're basically saying the state had its thumb on the scale when it shouldn't have had it on the scale. Then you enter into the Brown v. Sanders area, and in such an instance, you still – What does that mean? I don't know what you mean by that. Oh, excuse me. There is a line of authority that says, and I direct the court's attention back to what existed at the time in 1985, was as long as there's one aggravator, even in a weighing state, the court's not going to interject itself into it because the guy is death eligible anyway, and precisely because how are we supposed to go about this? I see you're down to about 12 seconds left. Do you want to reserve? Yes. I'll reserve my 5 seconds, I guess.  We'll give you a little time in rebuttal. Okay. Thank you, Your Honor. Thank you, Mr. Wheaton. Good morning. Good morning, Your Honor. My name is Michael Pichetta. I am from the Federal Public Defender's Office, and I'm representing Mr. Rogers in – I wonder if you'd keep your voice up a little bit. I beg your pardon. Thank you. I always start out too soft and then end up yelling.  Your Honor, may I please the court's attention? In court, the way that the State has presented this case, it's as if Valerio was never decided. And Valerio is an en banc decision of this Court that's controlling, but dealt with exactly the same instruction, and which held that it is unconstitutionally vague, and I think this Court is bound by that determination. Did the Nevada Supreme Court on direct appeal do a de novo reweighing? No, Your Honor. And didn't supply a narrowing construction in this case, did it? No, Your Honor. And that makes this case actually somewhat worse than Valerio, because in Valerio, the Nevada Supreme Court attempted to apply a narrowing construction, and the Valerio en banc court said, no, they didn't give it close appellate scrutiny, and they did not perform an adequate harmless error analysis, and therefore the penalty phase had to be reversed. But let me focus initially on what counsel started with, which is the language. This language is the same language that was used in Valerio. It is language that the United States Supreme Court said in Maynard v. Cartwright was absolutely controlled by the decision in Godfrey, because there was no distinction between the heinous, atrocious, and cruel, and the depravity definition that was given here. In this case, the only thing that the Nevada Supreme Court did on direct appeal was to say that the evidence supported the jury's findings of depravity and torture. Now, that was contrary to clearly established law and unreasonable in light of the evidence, because that's not what the jury did. The jury instructions and the jury verdicts are in the disjunctive. Torture, depravity of mind, or mutilation of the victim. And when the prosecutor argued this case to the jury, he argued he didn't think that there was anything to support the torture or mutilation, and so all of his argument is about depravity. And I just refer you to pages 2736 and following of the EOR. What the prosecutor says, and I'm quoting this, is two of them probably, that's the torture and mutilation, do not really comply in this case, and it is hard to tell if the torture itself could fit into the definition as you read that. But obviously the depravity of mind has to be here. How do you find depravity of mind? And then the prosecutor quotes the statute, and then he goes on to argue depravity of mind was never so evident as when a man takes a butcher knife and plunges it to the very hilt in the back of a 72-year-old woman. And then he does that with each of the victims, and he says, well, if that's not depravity of mind, then God help us. That is depravity of mind, simply citing the evidence of the killings of the victims. It is something that, in terms of the review of this issue, the Nevada Supreme Court said something about torture, but the prosecutor basically conceded in front of the jury that that didn't exist. So what we have here at this point is pure depravity. It is unnarrowed, pure depravity. And as I believe Judge Hurwitz pointed out, before Robbins in 1990, there is no narrowing construction. Is the depravity instruction in this case consistent with Robbins? I beg your pardon? Well, it is consistent in the sense that they continued to use that depravity instruction. But Robbins said, although this depravity language is, could be considered vague, for, to establish the factor we call depravity in Nevada, you have to find torture or mutilation. You have to find? Torture or mutilation. Okay, and that was my question. Was the subsequent definition of depravity involves torture or mutilation? It requires torture and mutilation. Right, and in this case, the prosecutor at trial, I read the transcript, said, I'm not arguing torture or mutilation. I'm arguing depravity of mind. That's correct. So even if we were to apply the subsequent definition to this case, the facts don't meet it? Is that what you're saying? One, the facts don't meet it. And two, I don't think that certainly the federal courts, but the Nevada Supreme Court either, could attempt to narrow it back down. No, I understand you can't narrow it retrospectively. I guess my question is, had the Nevada Supreme Court in this case done what it did in Robbins, which is narrowed it to torture and mutilation, we then have the court saying we think there's torture. But they can't, because there's no evidence, just as in Valerio, Valerio was a very brutal, multiple, multiple stab wounds of a prostitute. But the court could not narrow it to get around the unconstitutionality of the depravity, because they didn't give it the close appellate scrutiny that was required. And in this case, the Nevada Supreme Court didn't do anything to narrow it, because all it said was this language is fine, and there was evidence to support the jury's verdicts of depravity and torture when there is no and torture finding. It is only or torture. I'm sorry, I didn't mean to interrupt. Did the jury make a finding simply that this aggravator, cruel, heinous, and depraved, was satisfied, or did it make any special findings? The special verdict is a recitation of the statutory language. We find that the murder involves torture, depravity of mind, or mutilation of the victim. Counsel, Judge Gould, if I could interject a question here. Let's assume for a moment that, although I really haven't decided my position until we have more time, but let's assume that I accept your client's argument and decide that the argument is constitutionally vague for one reason or another. But let's assume that I don't address, or I don't have a problem with either of the conviction aggravators. If that were the case, what would the Brecht analysis be as to harmless error? In other words, I'd like you to answer your colleague's argument on the other side, except slightly change the hypothetical. Instead of taking two aggravators out, we just took this one depravity aggravator out. How do we know what the jury would have done? I think we have to come to the same conclusion that it was prejudicial under Brecht, regardless of the other aggravating factor, because even once you find death eligibility and I, let me back up. If you look at the closing argument in the penalty phase by the prosecutor, there are references to the prior convictions, but it's all in terms of his analysis, his close analysis of the aggravators. It's depravity, depravity, depravity, depravity. And I'd refer, Your Honor, to Stringer v. Black, where in finding a similar aggravator unconstitutionally vague, the court says, A vague aggravating factor employed for the purposes of determining whether a defendant is eligible for the death penalty fails to channel the sentencer's discretion. A vague aggravating factor used in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory factor. This is an illusory factor. This is the hard core of the problem within Godfrey and Maynard v. Cartwright and Valerio, is that if you take this simply pejorative language as the distinction between death eligibility and non-death eligibility, it allows the jury to channel whatever feelings it has about the case. And as it's pointed out in Godfrey, all murders are heinous in some sense to lay jurors who do not spend as much time in contact with these kinds of issues as we do. It's an overwhelming invitation as, in fact, in other parts of the penalty phase argument, the prosecutor encourages to express your outrage. This is a terrible, terrible crime, and this language of the depravity aggravating factor basically allows the jury to say that's what makes this case death worthy. And so under Brecht and under, I think, the language in Stringer v. Black, it is the vagueness of this aggravator that not just puts a thumb on the scale in terms of selecting the penalty as well as in weighing for death eligibility. It puts a very, very heavy thumb on the scale. Can I reverse Judge Gould's question? Let's assume that we find that the instruction was not unconstitutionally vague, and the only issue left in terms of penalty is the convictions. And I know you raised other issues that weren't certified, but just bear with that assumption for a second. Even if the 1977 conviction wasn't a conviction yet under Nevada law because the sentence hadn't yet been imposed, would that really make a difference in this case? There's only one aggravator, which is that he's been previously convicted of a prior felony. They prove it twice, but they're only really proving one aggravator. The jury would have known, been entitled to hear about, I think, the 1977 guilty plea, even if it wasn't an aggravator. So I'm trying to figure out if we only were dealing with that issue, would we really have harmful error? We would have a less compelling case, but I believe we would still have a case. The thing with the two prior conviction aggravators is each one adds weight. It's characterized as one aggravator, but it's two thumbs because each factor. Sure, but if the jury would have heard about the 1977 plea in any event, even if it weren't called an aggravator, can we really say it would have made a difference? Not by itself, perhaps not. I'm not conceding that. But I think in terms of the combination with the depravity aggravator, which was the focus of most of the prosecutor's argument, I think it is perhaps less compelling, but it adds weight to the Brecht analysis in terms of the prejudicial effect of the depravity. I have a hard time understanding why the jury would give improper weight to a conviction that's not yet finalized solely because the defendant skipped bail. Respectfully, Your Honor, I'm not sure if I'm answering your actual question here, but if we assume for the sake of argument that one of the convictions has been eliminated as not having been a conviction, and the depravity factor, which is unconstitutionally vague, has been eliminated, now we're down to — No, no. I'm asking you to assume that the depravity factor remains. Yes, Your Honor. And that was why I was saying alone it is much less compelling, but you can't view it alone. But I guess what I was trying to say is if they should have called the 1977 conviction a conviction because it hadn't been finalized, but the only reason it hadn't been finalized despite his guilty plea is because he absconded, I'm at a hard time seeing how that would have affected the weight to be given this one way or the other. If anything, it makes it look more aggravating. First thing, Your Honor, is we're talking about two different stages. In order to be found death-eligible under Nevada law, you have to have at least one aggravating factor, a statutory aggravating factor. And nobody can test that there is one. Which he would. But as counsel agreed, in order to find death-eligibility, you also have to find that that one aggravator is not outweighed by the mitigating evidence. And although, of course, the state cites the equivocal or contrary mental health evidence, there is a great deal of mental health evidence that was presented in support of the insanity defense. I think Judge Gould had a question, so I'll go ahead. Because my question was I thought in answering Judge Hurwitz's earlier question that you had gone a bit off the question because you referred to adding the conviction problem to the context of the depravity instruction, it would not be harmless. But the question was, assuming we uphold the depravity instruction and we have the 1976 conviction, but we thought there was a problem with the 77 conviction aggravator, would that be harmless? I thought maybe I misunderstood. I thought that was the question. I'm asking what he said. That was Judge Hurwitz's question, as I understood it. I am just continuing to resist conceding that the depravity aggravator is not unconstitutional. We're not asking for an assumption, not a concession. Under the terms of Judge Hurwitz's question, that is, we still have the depravity factor and we still have the 76 prior conviction. So we still have those two aggravators. Eliminating one aggravator reduces the weight, not as much as eliminating two aggravators, but it would eliminate the weight in the eligibility determination, and that has to be considered in combination with the other errors in the proceeding, even if we assume that depravity is not one of them. Now you're changing my hypothetical, so I still want to get back to this one. Let's assume everything else is right, is okay with this proceeding, except using the 1977 conviction as an aggravator. And let's also assume that in its weighing process, the jury was entitled to hear about the 1977 guilty plea, not a conviction. Tell me why under those circumstances you think harmful error occurred in this case. Well, we would still have to get to the questions that I hope I'm going to get to about ineffective assistance with respect to mitigation. You can get to it, but you can't change my hypothetical right now. If your hypothetical is we don't consider anything else except these three aggravators and we take away one, I would agree that that is a much harder case to make for Brecht. Okay. Now, you have other arguments. I'm not conceding it, but I am saying obviously getting rid of one aggravator is not as good as getting rid of two. Well, you don't even get rid of the aggravator. You get rid of one of the bases for the aggravator. I think even though we say it's one aggravator, when you have two convictions, they refer to it as two convictions, and that adds to the weight of that aggravator. Whether we call it two aggravators or one aggravator supported by two weights. The only relevance of it being, of there being a single aggravator, is that that's what gets you to the next step of the analysis, which is is the one statutory aggravator outweighed by the mitigation because it's only after that calculation do you become eligible for the death penalty, and then the jury is allowed to consider the non-statutory aggravation because that's the way the Nevada system works. They don't get to consider any of the non-statutory aggravation until they make the calculation that the statutory aggravator is not outweighed by the mitigating evidence. Right. You wanted to talk about ineffective assistance of counsel. Let me say one word first about the prior because Your Honor was asking about the state of the law. We don't have many books in Nevada, small state, small legal community, so there's no criminal law books. Mostly everybody works off the Nevada revised statutes annotated. If you look at NRS 176.105, that's the statute that defines what constitutes a judgment of conviction. And this is a page where anybody could have pulled this out in 1986. And back to when Nevada was a territory in 1861, the sentence is considered part, a necessary part. What do you do with the state's argument that the subsequent statute merely codified the existing law? It didn't because the preexisting law is all of these annotations going back to territorial times. And if you look, if you just, which, and this is. Well, I looked at the statute as it existed at the time that your client committed this crime, and it doesn't answer the question for me on its face. And so the question is, was there any case law? Look at Revuelta v. State, 86 Nevada 224, a 1970 case, because that's a prior conviction issue. And it says it's not a prior conviction if it doesn't satisfy the statute. Counsel, I might have missed hearing something. But could you again explain your answer to Judge Silverman's question, which is if we're looking at the 77 conviction and saying that really wasn't a conviction because of no sentence, why would that make any difference on the jury's balancing when the jury would be aware the guy pleaded guilty and wasn't sentenced because he ran away? At that point, the jury couldn't consider those facts. In making the initial eligibility determination, the jury considers the statutory aggravating factors alone. Right, but they've got the other conviction. Yes, but the jury can't consider that yet. So? At the eligibility stage, Your Honor, the jury considers the statutory aggravating factors alone and determines whether they are outweighed by the mitigating. Okay, but if they get the one aggravating factor of the earlier conviction, can't they then get into the balancing? They do the weighing of the two statutory aggravating factors under Judge Hurwitz's question. That is the depravity and the one prior conviction. But they have to balance just those against the mitigating evidence to determine if the mitigating evidence outweighs those before it can consider in the selection phase the other prior conviction that isn't really a conviction. Okay, thanks. I'd like to turn, with what little time I have left, to the penalty phase problem, the ineffective assistance of the penalty phase problem. And it's just so that I'm clear, these are issues that were not certified? I believe the IAC penalty was certified, but anyway. You're talking about the penalty phase stuff? Yes. Okay. It's the guilt phase stuff that's not certified. This is a case where before trial, defense counsel asked for funds to do a mitigation investigation, and the judge said, no, I never heard of anybody preparing for a mitigation investigation before you're convicted. So after the trial and the conviction, the defense counsel has to put on a mitigation case, and they've not had any funds. And the judge offers them $100 in fund bills to do a mitigation case for this client who is now facing the death penalty. Do I understand correctly, if we agree with you on these other things we've been talking about, the ineffective assistance of counsel at the penalty phase becomes moot? Is that right? It does, and I would encourage the court to do that. Let me ask you a follow-up. Does that also apply to the claim that he was incompetent to have his habeas petition considered? There should have been a study. At this juncture, I believe so. In fact, most of the issues that we are talking about are penalty issues, because although there are certainly other difficult legal issues in the case relating to the guilt phase, the quality of the evidence in the guilt phase is different from the lack of evidence that they were able to present in the penalty phase. What do you have us do with the guilt phase issues that are not certified? That leads me to the unfortunate procedural issues, which are somewhat intractable. The posse comitatus issue, the issue of Judge Legate's compensatory bias, those are not certified issues, but those require us to delve into the procedural default issues as, in fact, the ineffective assistance of post-conviction counsel, the ineffective assistance of trial counsel with respect to the penalty phase also leads us into an analysis of pinholster, which, because the procedural, I mean the prejudicial effect, is based on material that was presented after the Nevada Supreme Court decided the direct appeal, and which was procedurally defaulted. Would we be on the right track to say as to those issues, the guilt phase issues, what we should do is send those issues back to the district court to reconsider whether Martinez relieves you of any procedural bars? Absolutely, Your Honor. First, Martinez, assuming the procedural bars are valid. We don't concede that. We argue that they're not. But if they are, if they do bar the district court's consideration of the merits of those claims, then Martinez, which was decided after Judge Reed issued his order in this case, we should be given the opportunity to go back and see if we can overcome that procedural default under Martinez. Do you have guilt phase claims to which there is no Martinez issue? Uncertified ones? I thought the posse comitatus one probably fell in that category. Well, the posse comitatus and the claim about Judge Lee Yates are both ineffective assistance of trial counsel cases, issues to some extent, as well as being substantive. Weren't they raised on direct appeal? No. No, Your Honor. Okay. There were other issues that were sort of within hand grenades distance of those issues with respect to the veneer, to the questioning of the jurors about whether they would automatically impose the death penalty or not. But the entire range that we have of procedural issues arising from pinholster that may be solved under the Dickens case by going back under Martinez. And, of course, if that were this Court's conclusion, that would moot consideration of really every other claim. You agree that the trial judge didn't have the benefit, the district judge, didn't have the benefit of Martinez? Yes. Or Dickens? No, none of them. The late Judge Reed decided the case and Martinez came down afterwards. And, of course, the State has argued we shouldn't be allowed to invoke Martinez. But since it's a case that arose after the decision, I think we're allowed to do so here. So if there are no other questions, let me see if Judge Gould or Judge Hurwitz have anything further. Yeah, I want to commend from my perspective the arguments on both sides. I have no questions. Thank you. Thank you, Your Honor. Thank you. Mr. Wieland, you used up your time, but we'll put three minutes on the clock for rebuttal, particularly with these uncertified issues. I beg your pardon, Your Honor? I'm especially interested in the guilt phase issues that Mr. Pichetta brought up. Well, as Mr. Pichetta already pointed out, it's our position. Martinez does not apply. He was given an opportunity to show cause and prejudice in his response to our motion to dismiss, based upon procedural bars and that stuff. And, frankly, he made no effort whatsoever to argue cause and prejudice in any fashion. So we would object. Before Martinez came out? Yes. But the arguments could have been made. They were available. As I pointed out, and as the judge pointed out in his order, there was no effort to show cause and prejudice in any shape, manner, or form. Well, they did attempt to show ineffective assistance of counsel, did they not? I beg your pardon? They did attempt to show ineffective assistance of counsel in the habeas. Not as cause and prejudice for procedural bars, timeliness, or anything like that. But they made allegations and attempted to present evidence about ineffective assistance, both at the trial stage and at the first post-conviction review, did they not? They made allegations, but those allegations were found to be either unexhausted, untimely, or procedurally barred. And the problem that I have, going back with Martinez now, the arguments could have and should have been made back then. And, frankly, I don't think they should be afforded a second opportunity to show cause and prejudice when they didn't make the effort previously. Moreover, with respect to those issues, those were all posse comitatus, the compensatory bias, and that sort of stuff. That's been available since day one. There's reference to the posse comitatus in the trial. One of the victims, Mr. Stroh, well, the father was a member. So what you're talking about is, well, let's go back yet again after a direct appeal, three state post-convictions, the opportunity to exhaust claims, two opportunities provided by the federal district court to return to state court and exhaust claims. And now we're going to proceed yet again and perhaps with respect to, oh, is this a new claim or not, and now are we going to allow him yet another opportunity to return to state court when he's already had two? That sort of stuff is clearly foreclosed by SLAC because, at least with respect to exhaustion issues, simply because he's had the opportunity and, quite frankly, he's been aware of the exhaustion requirement for, honestly, decades now. So respondents respectfully suggest that he should not be afforded that opportunity. I would like to thank the court. See if Judge Gould has anything further or Judge Hurwitz. Judge Gould? No, I don't. Again, I think it's very well argued on both sides. I appreciate it. I have no other questions. Judge Hurwitz? Thank you, Your Honor. I just want to echo Judge Gould's comment. You've both done an excellent job, and we thank you. It sounds like we're unanimous about that, at least. Thank you. Both counsel will stand and recess. Case is submitted.
judges: Silverman, Gould, Hurwitz